# Duty to File Public Financial Disclosure Report

A member of a commission in the Executive Branch need not file a public financial disclosure report in circumstances where the employee's salary is set by administrative action within a range specified by statute, is below the statutory salary threshold for such reports, but could have been set at a level making a public report necessary.

The financial disclosure obligations of Legislative Branch officials should be construed similarly, because the statutory language applicable to officials in the Executive Branch is, in relevant part, identical to that applicable to officials in the Legislative Branch.

December 19, 2002

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked for our opinion whether an employee in the Executive Branch, by virtue of his salary, must file a public financial disclosure report. You have asked us to assume that the employee's salary is set by administrative action within a range specified by statute, is below the statutory salary threshold for such reports, but could have been set at a level making a public report necessary. We believe that, in such circumstances, no public report is required. We further believe that the financial disclosure obligations of Legislative Branch officials should be construed similarly, because the statutory language applicable to officials in the Executive Branch is, in relevant part, identical to that applicable to officials in the Legislative Branch. The present opinion confirms our oral advice.

## I.

You have asked us to consider what rules as to salary thresholds would apply to members of a commission in the Executive Branch whose salaries were to be set as follows:

> [e]ach member of the Commission may be compensated at not to exceed the daily equivalent of the annual rate of basic pay in effect for a position at level IV of the Executive Schedule under section 5315 of title 5, United States Code, for each day during which that member is engaged in the actual performance of the duties of the Commission.

The Ethics in Government Act of 1978 requires the filing of a public financial disclosure report by, among others,

> each officer or employee in the executive branch . . . who occupies a position . . . , in the case of positions not under the General Schedule, for which the rate of basic pay is equal to or greater than 120 percent

225

of the minimum rate of basic pay payable for GS-15 of the General Schedule.

5 U.S.C. app. 4 § 101(f)(3) (2000). *See also* 5 C.F.R. § 2634.202(c) (2002) (positions "the rate of basic pay for which is fixed . . . at a rate equal to or greater than 120% of the minimum rate of basic pay for GS-15"). At present, the current minimum rate of basic pay for GS-15 is $82,580, and 120 percent of that rate would be just under $99,100. The maximum salary that could be set for a member of the Commission is the rate for level IV of the Executive Schedule, currently $130,000.

We address only public financial disclosure requirements. Employees who are not required to file public disclosures may have to file confidential forms. *See* 5 C.F.R. § 2634.904 (2002).

## II.

The Executive Branch has taken two approaches to determining whether "the rate of basic pay [for a position] is equal to or greater than 120 percent of the minimum rate of basic pay payable for GS-15 of the General Schedule." The position about which you ask would not qualify under either approach.

The first approach is illustrated by the application of the financial disclosure requirements to Assistant United States Attorneys, whose salaries are set under a statute that is nearly identical to the provision you have asked us to consider. Under 28 U.S.C. § 548 (2000), the Attorney General "shall fix the annual salary" of Assistant United States Attorneys and certain other officials "at rates of compensation not in excess of the rate of basic compensation provided for Executive Level IV of the Executive Schedule set forth in section 5315 of title 5, United States Code." We are informed that Assistant United States Attorneys file public financial disclosure reports if their pay exceeds the threshold. The evident rationale is that the position does not have a "rate of basic pay" until one is set administratively. Thus, Assistant United States Attorneys do not all escape the filing requirement because the statute would permit setting their pay at zero, and, conversely, it is not the case that, because the statute calls for a salary "not to exceed" a level at which a public financial disclosure report would be required, every Assistant United States Attorney must file a public report. *See* United States Attorneys' Manual § 1-4.200 (2002).[1]

Under the second approach, where the salary of individual employees is set administratively within a statutory range that is not divided by grades or steps, the

---

[1] We have confirmed with the Departmental Ethics Office that those Assistant United States Attorneys whose pay exceeds the threshold file public forms and those whose pay is below do not. We are further informed that the pay of supervisory Assistant United States Attorneys is intentionally set above the threshold to ensure that they file.

Office of Government Ethics ("OGE") has interpreted the "rate of basic pay" to be the lowest level of that range. *Senior Employees; Post-Government Employment Restrictions; Public Financial Disclosure Requirement*, Informal Advisory Op. 98x2 (Feb. 11, 1998), *available at* http://www.oge.gov/OGE-Advisories/Legal-Advisories/Legal-Advisories/ (last visited Aug. 5, 2012) ("1998 Opinion"). In the 1998 Opinion, OGE was asked about a component in an agency whose employees' pay was "determined by the Secretary, in an amount not less than the minimum rate payable for GS-15 nor more than the rate payable for level I of the Executive Schedule." *Id*. at 1. Under the implementing regulations, "no established pay grades or steps exist[ed] within those parameters, but instead the system ha[d] a single, flexible pay range," and "[e]ach employee's actual pay [was] individually determined by the Secretary or her designee, based on factors in the regulation, and that amount [could] be periodically adjusted." *Id*. OGE held that, for purposes of financial disclosure requirements, the "rate of basic pay" in these circumstances "means the lowest step or entry level pay authorized for a particular pay grade or range." *Id*. at 3. Thus, because the pay of employees in question could be as low as GS-15, "which will always be less than the statutory pay threshold for requiring public financial disclosure reports (120 per cent of the minimum rate payable for GS-15), [these employees were] not required by 5 U.S.C. app., 101(f)(3) to file such reports." *Id*. (footnote omitted). OGE recognized that, as a result, "some . . . employees who receive relatively high amounts of pay would not be required to file," *id*., but that "[i]t would be up to Congress to amend the financial disclosure statute, if they intended a different result." *Id*.

Here, the pay of a member of the commission could be set as low as zero, and there are no grades or steps within the range from zero to the highest possible salary at executive level IV. Therefore, if the 1998 Opinion were followed, members would not file public disclosure forms under the salary provisions.

It might be possible to reconcile these two approaches. Arguably, the concept of a salary "grade" makes no sense when the range begins at no salary at all, and only the first approach would fit the present case. But we need not try here to reconcile these two approaches. Under either one, the salary threshold would not be met by a member of the Commission making less than $99,100.[2]

_____

[2] We do not address any other ground on which an Executive Branch employee might be required to file a public disclosure form, including particularly an exercise of the discretionary authority of the Director of OGE to declare that a position is of "equal classification" to positions above the salary threshold. *See* Office of Government Ethics, *Public Financial Disclosure Positions and Equal Classification Process*, Informal Advisory Op. 85x7 (May 20, 1985), *available at* http://www.oge.gov/ OGE-Advisories/Legal-Advisories/Legal-Advisories/ (last visited Aug. 7, 2012) (employees are of "equal classification" to covered employees because their responsibilities are equivalent to those of employees in the Senior Executive Service); Memorandum for Kevin D. Rooney, Assistant Attorney General for Administration, and Philip H. Modlin, Deputy Associate Attorney General, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Filing of Public Disclosure Reports by Presidential Appointees in the Department* (Aug. 8, 1979) (finding of "equal classification"

## III.

We note that the language applicable to officials in the Executive Branch is, in relevant part, identical to the language defining those "officer[s] or employee[s] of the Congress" required to file public forms (leaving aside the additional category of principal assistants for Members of Congress who have no employees above the salary threshold). *See* 5 U.S.C. app. 4 §§ 101(f)(10), 109(13)(A), (B).[3] We therefore believe that the language ought to be construed to have the same meaning. *See Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 342 (1994) ("identical words used in different parts of the same act are intended to have the same meaning") (citations and internal quotations omitted). In light of the Attorney General's responsibility for enforcing the financial disclosure require-ments for both Legislative Branch and Executive Branch officials, *see* 5 U.S.C. app. 4 § 104(a) (Attorney General may bring a civil penalty action for knowing and willful failure to file a report), it would be particularly anomalous for two provisions of the same act, having identical language, to be subject to different constructions.

A memorandum by the Congressional Research Service ("CRS") appears to offer a view contrary to ours. Memorandum for the Senate Committee on Gov-ernmental Affairs, from Jack Maskell, Cong. Research Serv., *Re: Financial Dis-closure Requirements of Persons Appointed to a Federal Commission* (Dec. 4, 2002) ("CRS Memorandum"). Noting that members of the National Commission on Terrorist Attacks Upon the United States ("Commission") may be compensated

---

could be made for United States Marshals). Unlike employees in the Executive Branch, Legislative Branch employees are not subject to discretionary determinations based upon the "equal classification" of their positions. *See* 5 U.S.C. app. 4 § 109(13).

[3] As originally enacted, the Ethics in Government Act used very similar, but not identical, language to specify the salary levels at which a public disclosure filing was required. The 1978 Act defined a covered officer or employee of the Legislative Branch to include "each officer or employee of the legislative branch who is compensated at a rate equal to or in excess of the annual rate of basic pay in effect for grade GS-16 of the General Schedule[.]" Pub. L. No. 95-521, § 101(e)(1). The Executive Branch officers and employees required to file a public report included "each officer or employee in the executive branch . . . whose position is classified at GS-16 or above of the General Schedule prescribed by 5332 of title 5, United States Code, or the rate of basic pay for which is fixed (other than under the General Schedule) at a rate equal to or greater than the minimum rate of basic pay fixed for GS-16[.]" *Id*. § 201(f)(3). In 1992, Congress amended section 201(f)(3) to read as it does today—"who occupies a position classified above GS-15 of the General Schedule or, in the case of positions not under the General Schedule, for which the rate of basic pay is equal to or greater than 120 percent of the minimum rate of basic pay payable for the GS-15 of the General Schedule." Pub. L. No. 102-378, § 4(a)(1)(A). In that same act, Congress also amended the definition of employees and officers of Congress, substituting "each officer or employee of the legislative branch who, for at least 60 days, occupies a position for which the rate of basic pay is equal to or greater than 120 percent of the minimum rate of basic pay payable for the GS-15 of the General Schedule" for "each officer or employee of the legislative branch who is compensated at a rate equal to or in excess of the annual rate of basic pay in effect for grade GS-16 of the General Schedule[.]" Pub. L. No. 102-378, § 4(a)(2)(B).

at a level making a public report necessary, CRS states that "[a]n incumbent in or entrant into such a covered position might arguably be able to waive compensation, or agree to a lesser amount of compensation, but it is not clear whether such action would then exempt such incumbent from the disclosure requirements, since the *position* itself is one which is statutorily entitled to receive a rate of pay above the threshold amount." *Id*. at 3 (original emphasis). The CRS Memorandum cites, in support of this suggestion, the Office of Government Ethics' guidance that Executive Branch officials, if detailed into covered positions, must file financial disclosure reports. *Id*. at 3 & n.11 (citing Office of Government Ethics, *Public Financial Disclosure: A Reviewer's Reference* 2-7 (1994)).

The CRS Memorandum mistakenly assumes that when a position, by statute, has a "rate of basic pay" above the threshold, an employee may agree to accept a lesser amount. But "[a] federal office holder cannot legally waive a salary fixed by law." *Dual Office Compensation*, 2 Op. O.L.C. 368, 368 (1977) (citing *Glavey v. United States*, 182 U.S. 595 (1901)) (footnote omitted). A member of the Commission receiving less than the maximum rate would not be "waiv[ing]" compensation or "agree[ing] to a lesser amount" than set by statute. The CRS Memorandum rests on the view that the "rate of basic pay" is the highest amount that a Commission member could be paid, but that view is without foundation. Whether the rate of pay is taken to be the lowest pay of the "grade" or the amount set administratively, the "rate of basic pay" in the present circumstances would be below the threshold.[4]

JAY S. BYBEE
*Assistant Attorney General*
*Office of Legal Counsel*

---

[4] It makes no difference that a member of the Commission may have a greater power than other officers or employees to choose the level of his pay. Because the member cannot waive his salary, it cannot be concluded that the amount he receives (even if he helped to determine that amount) is less than his "rate of basic pay."